668 December 15, 2016 No. 78

IN THE SUPREME COURT OF THE
STATE OF OREGON

Tim NAY,
*Respondent on Review,*
*v.*
DEPARTMENT OF HUMAN SERVICES,
*Petitioner on Review.*
(CA A150722; SC S062978)

On review from the Court of Appeals.*

Argued and submitted November 9, 2015.

Carson L. Whitehead, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Matthew W. Whitman, Portland, argued the cause and filed the brief for respondent on review. Also on the brief was the firm of Nay & Friedenberg, Portland.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices.**

BALDWIN, J.

The decision of the Court of Appeals is affirmed in part and vacated in part. The rule amendments to OAR 461-135-0832(10)(b)(B)(viii) (2010) and OAR 461-135-0835 (1)(e)(B)(iii) (2010) are held invalid.

_____

\* On Judicial Review of Department of Human Services Administrative Rules OAR 461-135-0832 and OAR 461-135-0835. 267 Or App 240, 340 P3d 720 (2014).

\*\* Linder, J., retired December 31, 2015, and did not participate in the decision of this case. Nakamoto, J., did not participate in the consideration or decision of this case.

**BALDWIN, J.**

In general, the Department of Human Services is required by law to recover Medicaid payments from those assets in which the Medicaid recipient had an interest at the time of death. In 2008, the department amended its administrative rules regarding the scope of that recovery. The amended rules allow the department to recover the payments from assets that the recipient had transferred to a spouse up to five years before a person applies for Medicaid. Pursuant to ORS 183.400, petitioner Tim Nay sought judicial review of those rule amendments in the Court of Appeals. The Court of Appeals agreed with petitioner that the amendments were invalid, *Nay v. Dept. of Human Services*, 267 Or App 240, 340 P3d 720 (2014), and the department sought review. As we will explain, we conclude that the rule amendments are invalid under ORS 183.400(4)(b) because they exceed the department's statutory authority. Accordingly, we affirm the Court of Appeals.

## I. BACKGROUND

A. *Medicaid*

This case involves the recovery of payments by the state under Medicaid. Medicaid "is a cooperative endeavor in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 US 297, 308, 100 S Ct 2671, 65 L Ed 2d 784 (1980). The full scheme is quite complex, but most of those details are not relevant to our analysis here. (For a more detailed explanation of the legal framework, see *Nay*, 267 Or App at 242-45.) It is sufficient here to note that (1) a person may be eligible to receive certain benefits under the program, and (2) those benefits later may be recovered by the state from certain assets. The latter aspect—the recovery of those benefit payments by the state, known as "estate recovery"—is the issue on which this case turns.

B. *Estate Recovery*

1. *Current Statutes*

We first briefly address the relevant federal and state statutes regarding the recovery of those Medicaid

benefit payments. In doing so, we must consider which version of the federal and state statutes we should examine. The parties and the Court of Appeals all appear to have quoted the current versions of those statutes. Many of those statutes, however, have been amended multiple times since the rule amendments were first promulgated in 2008.[1]

It is plausible that the validity of the rule amendments should be evaluated against the versions of the statutes in effect when the rules were amended, and not by later versions. The parties did not address that question in their briefing. However, we have reviewed the statutory amendments since 2008 and do not find any substantive changes that would affect our analysis of the issues here. Thus, we follow the lead of the parties and the Court of Appeals and quote all relevant statutes as they exist currently.

### 2.  *Federal Statutes*

Federal law generally prohibits recovery of properly paid Medicaid benefits, except from the Medicaid recipient's estate. The relevant statute provides, in part:

> **"(b)  Adjustment or recovery of medical assistance correctly paid under a State plan**
>
> "(1)  No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals:
>
> "(A)  In the case of an individual described in subsection (a)(1)(B) of this section, the State shall seek adjustment or recovery from the individual's estate * * *.
>
> "(B)  In the case of an individual who was 55 years of age or older when the individual received such medical

---

[1] For example, 42 USC § 1396p was amended by Pub L 111-5, div B, title V, § 5006(c), Feb 17, 2009, 123 Stat 507; and Pub L 113-67, div A, title II, § 202(b)(3), Dec 26, 2013, 127 Stat 1177. ORS 411.620 was amended by Or Laws 2009, ch 595, § 262; Or Laws 2011, ch 720, § 115; and Or Laws 2013, ch 688, § 50. ORS 411.630 was amended by Or Laws 2011, ch 720, § 116, and Or Laws 2013, ch 688, § 51. Additionally, ORS 416.350 was amended by Or Laws 2009, ch 595, § 278 (at that time the statute had been numbered ORS 414.105); Or Laws 2011, ch 720, § 154; and Or Laws 2013, ch 688, § 87.

assistance, the State shall seek adjustment or recovery from the individual's estate, but only for [certain identified forms of medical assistance.]"

42 USC § 1396p(b)(1) (boldface in original).

Because recovery can be made only from the Medicaid recipient's estate, much depends on what "estate" means. Federal law provides some guidance on that as well. The federal statute defining "estate," 42 USC § 1396p(b)(4), contains two parts. The first part provides that the Medicaid recipient's estate includes whatever state probate law defines as the estate. The statute also gives states the option to choose to expand that definition, so that it includes not only the probate estate, but also other property interests that the Medicaid recipient had at the time of death. Specifically, the statute provides, in part:

"(4)   For purposes of this subsection, the term 'estate,' with respect to a deceased individual—

"(A)   shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and

"(B)   may include, at the option of the State ***, any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement."

42 USC § 1396p(b)(4).

The permissive definition of "estate" in subparagraph (B) applies only to the extent of the interest that the Medicaid recipient held at the time of death. *See* 42 USC § 1396p(b)(4)(B) (permissive definition includes interest held at time of death, "to the extent of such interest"). The mere existence of a Medicaid recipient's interest thus does not necessarily entitle a state to recover the full value of the asset. The state may recover only the value of the Medicaid recipient's interest.

Estate recovery can occur only after the Medicaid recipient's spouse also has died. 42 USC § 1396p(b)(2) (adding additional conditions).

3.  *State Statutes*

Oregon statutes generally parallel the federal provisions. ORS 416.350(2) authorizes recovery from a Medicaid recipient's "estate," and provides in relevant part:

"Medical assistance pursuant to ORS chapter 414 paid to or on behalf of an individual [in certain circumstances not relevant here] may be recovered from the estate of the individual or from any recipient of property or other assets held by the individual at the time of death including the estate of the surviving spouse."

The estate recovery may not occur from a spouse until the spouse has died (and certain other conditions are met). *Id.* (medical assistance "may not be \*\*\* recovered until after the death of the surviving spouse, if any").

In a later subsection, the legislature has directed that Oregon will use the expanded, permissive definition of "estate" authorized by 42 USC § 1396p(b)(4)(B).

"(6)   As used in this section:

"(a)  'Estate' includes all real and personal property and other assets in which the deceased individual had any legal title or interest at the time of death including assets conveyed to a survivor, heir or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust or other similar arrangement."

ORS 416.350(6).

The department concedes that state law also limits estate recovery to the value of the Medicaid recipient's interest in those assets. The existence of some fractional interest in an asset does not permit estate recovery of the full value of the asset. *See* ORS 416.350(4).

In addition, the Oregon legislature has authorized the setting aside of certain property transfers that otherwise would be subject to estate recovery. The general authority to set aside those transfers is found in ORS 411.620(2), which states:

"Except with respect to bona fide purchasers for value, the department, the authority, the conservator for the recipient or the personal representative of the estate of a deceased recipient may prosecute a civil suit or action to set

aside the transfer, gift or other disposition of any money or property made in violation of any provisions of ORS 411.630, 411.708 and 416.350 and the department or the authority may recover out of such money or property, or otherwise, the amount or value of any public assistance or medical assistance obtained as a result of the violation, with interest, together with costs and disbursements incurred in recovering the public assistance or medical assistance."

As relevant here, the legislature has specified that two different classes of transfer may be avoided for purposes of estate recovery. The first class consists of transfers of property made without adequate consideration. ORS 416.350(2) provides, in part:

"Transfers of real or personal property by recipients of such aid without adequate consideration are voidable and may be set aside under ORS 411.620(2)."

The department admits that that statute does not apply to transfers that were completed before a person could be considered to be a "recipient[] of such aid."

The second class of transfers that may be avoided are those transfers that the Medicaid recipient made with the intent to hinder or prevent estate recovery. ORS 411.630(2) provides, in part:

"A person may not transfer, conceal or dispose of any money or property with the intent:

"* * * * *

"(b)   Except as to a conveyance by the person to create a tenancy by the entirety, to hinder or prevent the department or the authority from recovering any part of any claim it may have against the person or the estate of the person."

C.   *Rule Amendments*

With that statutory background, we turn to the challenged rule amendments. There are two rules at issue. The first rule, OAR 461-135-0832, defines the term "estate." The second rule, OAR 461-135-0835, addresses the extent to which the department can recover from the spouse's estate.[2]

---

[2] Petitioner does not challenge the rules in their entirety. Instead, he only challenges the rule amendments that, beginning in 2008, added provisions

Prior to 2008, those rules contained a "loophole" that allowed Medicaid recipients and their spouses to avoid estate recovery. Before applying for Medicaid benefits, the department asserts, a future Medicaid recipient could transfer an asset to their spouse—an "interspousal transfer." By doing so, the Medicaid recipient "could permanently prevent [the department] from recovering the recipient's interest in marital property."

In order to close that "loophole," the department amended the two rules at issue. The amended rules themselves are the same in substance, if different in operation: Both of the amended rules now expressly provide that estate recovery may reach any interspousal transfers made in the 60 months—five years—before the Medicaid recipient first applies for benefits.

The first amendment expanded the definition of the word "estate." As amended through October 1, 2010, OAR 461-135-0832 provided in part:

"(10)   'Estate' means:

"* * * * *

"(b)   With respect to the collection of payments made for public assistance provided on or after July 18, 1995:

"* * * * *

"(B)   For recipients who die on or after October 1, 2008, all real property, personal property, or other assets, wherever located, in which a recipient had any legal title or ownership or beneficial interest at the time of death of the recipient, including real property, personal property, or other assets conveyed by the recipient to, subsequently acquired by, or traceable to, a person, including the recipient's spouse and any successor-in-interest to the recipient's spouse, through:

---

allowing the recovery of interspousal transfers within 60 months after the Medicaid recipient first applied for benefits. The rules have been amended since that time, but those amendments all retain essentially the same text. Following the lead of the parties and the Court of Appeals, we quote the versions of the rules as they existed on October 1, 2010, the last date covered by the limited record before us. *See* ORS 183.400(3) (record consists of rule at issue, relevant statutes, and "[c]opies of all documents necessary to demonstrate compliance with applicable rulemaking procedures").

"(i)   Tenancy by the entirety;

"(ii)   Joint tenancy;

"(iii)   Tenancy in common;

"(iv)   Not as tenants in common, but with the right of survivorship;

"(v)   Life estate;

"(vi)   Living trust;

"(vii)   Annuity purchased on or after April 1, 2001; or

"(viii)   Other similar arrangement, such as an interspousal transfer[3] of assets, including one facilitated by a court order, which occurred no earlier than 60 months prior to the first date of request established from the recipient's and the recipient's spouse's applications, or at any time thereafter, whether approved, withdrawn, or denied, for the public assistance programs referenced in OAR 461-135-0835(2)."

(Emphases omitted.) The amendment at issue here is OAR 461-135-0832(10)(b)(B)(viii), which changed "[o]ther similar arrangement" to include a Medicaid recipient's transfers to a spouse within the 60 months before applying for benefits.

The second amendment expanded the list of the spouse's assets from which the department could recover Medicaid payments. As amended through October 1, 2010, OAR 461-135-0835(1) provided:

"(e)   For a recipient who died on or after October 1, 2008:

"* * * * *

"(B)   * * * [T]he Department has a claim against the estate of the recipient's spouse for public assistance paid to the recipient, but only to the extent that the recipient's

---

[3] As amended, the same rule also defined "interspousal transfer":

"'Interspousal transfer' means any transfer, or chain of transfers, that effectively transfers title or control of an asset, or an interest in an asset, from one spouse to another, including: direct transfers between spouses, transfers from one or both spouses to a trust, and transfers from one trust to another trust."

OAR 461-135-0832(13).

spouse received property or other assets from the recipient through any of the following:

"(i)   Probate.

"(ii)   Operation of law.

"(iii)   An interspousal transfer, including one facilitated by a court order, which occurs:

"(I)   Before, on, or after October 1, 2008; and

"(II)   No earlier than 60 months prior to the first date of request (see OAR 461-135-0832) established from the applications of the recipient and the recipient's spouse, or at any time thereafter, whether approved, withdrawn, or denied, for the public assistance programs referenced in section (2) of this rule."

(Emphasis omitted.) The change at issue is OAR 461-135-0835(1)(e)(B)(iii), which allows the department to recover property transferred up to 60 months before the Medicaid recipient applied for benefits, in addition to assets transferred by probate and operation of law.

### D.   *Court of Appeals' Decision*

Petitioner requested judicial review from the Court of Appeals pursuant to ORS 183.400. He challenged the amendments to the rules, insofar as they allowed recovery of transfers to a spouse made within the 60 months before the Medicaid recipient applying for benefits. He asserted (among other things) that the department had exceeded its statutory authority under both state and federal law when it adopted those amendments, and so the amendments were invalid. *See* ORS 183.400(4)(b) (court will declare rule invalid if rule "[e]xceeds the statutory authority of the agency").

The Court of Appeals agreed with petitioner and rejected the department's assertion that the federal and state statutes allowed it to recover transfers that the Medicaid recipient had made prior to his or her death. *Nay*, 267 Or at 259-63. As noted, the federal and state statutes defining "estate" provide that that term includes assets as to which the Medicaid recipient had an interest at the time of death. 42 USC § 1396p(b)(4)(B); ORS 416.350(6). The court rejected the department's assertion that either Oregon

probate law or domestic relations law created an interest at the time of death in property that the Medicaid recipient had transferred before death. 267 Or App at 260-62.

The Court of Appeals also considered the department's suggestion that generic terms included in both the state and federal definitions of "estate" are broad enough to allow the department to recover "assets that the Medicaid recipient fully transferred away during his or her life." 267 Or App at 248. The department noted, in that regard, that the state statute provides that "estate" additionally includes "assets conveyed to a survivor, heir or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust *or other similar arrangement.*" ORS 416.350(6)(a) (emphasis added). The federal statute, 42 USC § 1396p(b)(4)(B), is almost identical to the state statute, save that the last term is "other arrangement" rather than "other similar arrangement." The department asserted that the generic concluding terms in both those statutes—"other similar arrangement" and "other arrangement"—were broad enough to allow the department to recover transfers that the Medicaid recipient had made before death. *See* 267 Or App at 259.

The court found that argument unpersuasive. In context, the only assets that fell within either the federal or state definitions were those in which the Medicaid recipient had some property interest at the time that the Medicaid recipient died. The generic terms "other arrangement" and "other similar arrangement" shared the same qualities as the examples that preceded it in both statutes, 267 Or App at 247-48—"assets conveyed * * * through joint tenancy, tenancy in common, survivorship, life estate, [and] living trust," 42 USC § 1396p(b)(4)(B); ORS 416.350(6)(a). All those examples still involved only interests that the Medicaid recipient held at the time of death, but that were transferred by operation of law outside probate when the recipient died. 267 Or App at 248 (federal statute); *id*. at 254 (state statute).

The Court of Appeals thus held the rules invalid. The rule amendments allowed recovery of transfers made before the recipient's death, even though the recovery of "such predeath transfers are antithetical to the definition

of estate as provided by federal and state law." *Id.* at 263. Accordingly, the rule amendments exceeded federal and state statutory authority. *Id.*

The department sought review, which we allowed.

## II.   STANDARD OF REVIEW

We begin by focusing our attention on the standard of judicial review we should apply to determine whether the rule amendments are valid. As we will explain, the correctly identified standard of judicial review effectively determines the result in this case.

As noted, petitioner brought this action pursuant to ORS 183.400. That statute provides for a limited range of judicial review. The record before the court is quite limited:

"(3)   Judicial review of a rule shall be limited to an examination of:

"(a)   The rule under review;

"(b)   The statutory provisions authorizing the rule; and

"(c)   Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures."

ORS 183.400(3). Furthermore, the court may hold the rule invalid only in limited circumstances:

"(4)   The court shall declare the rule invalid only if it finds that the rule:

"(a)   Violates constitutional provisions;

"(b)   Exceeds the statutory authority of the agency; or

"(c)   Was adopted without compliance with applicable rulemaking procedures."

ORS 183.400(4).

Challenges to a rule's validity under ORS 183.400 are colloquially called "facial challenges," *see, e.g., Nay,* 267 Or App at 241, although that term is not used in the statute itself. Apparently because of that terminology, the department asserts that courts should review the validity of rules under essentially the standard of judicial review used to determine a facial challenge to the constitutionality of

a statute: that is, we should ask only whether there is any reasonably likely application of the rule that would comport with the statutes. *See State v. Sutherland*, 329 Or 359, 365, 987 P2d 501 (1999) ("For a statute to be facially unconstitutional, it must be unconstitutional in all circumstances, *i.e.*, there can be no reasonably likely circumstances in which application of the statute would pass constitutional muster."). Here, the department asserts that the rules are valid if the department can "show that the interspousal transfer rules are capable of valid application."

That is not the correct legal standard when an administrative rule is challenged, however. This court has explained that the standard for a facial challenge to the constitutionality of a statute is "foreign to the administrative law of this state" when the court is reviewing "what at bottom simply are challenges to the validity of an administrative rule." *See Friends of Columbia Gorge v. Columbia River (S055772)*, 346 Or 366, 375-76, 213 P3d 1164 (2009) (Court of Appeals had erred in concluding that a management plan should be reviewed under federal standard for determining the constitutionality of statute, which was whether the statute "cannot be applied consistently with the law under any circumstance" (internal quotation marks and citation omitted)). In fact, "this court, so far as we can determine, has never applied that standard to anything other than a constitutional challenge to a statute." *Id.* at 376.

As this court had previously explained, the correct sequence and nature for analyzing a challenge under ORS 183.400, is as follows:

> "In the proper sequence of analyzing the legality of action taken by officials under delegated authority, the first question is whether the action fell within the reach of their authority, the question which in the case of courts is described as 'jurisdiction.' If that is not in issue, as it is not in this case, the question is whether the action was taken by procedures prescribed by statute or regulation. Assuming that proper procedures were followed, the next question is whether the substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered, or contravened

some other applicable statute. These steps are designed to assure that the challenged action, particularly an action challenged for arguably violating constitutional rights, in fact was authorized by the state's or local government's politically accountable policy makers."

*Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984); *see also Friends of Columbia Gorge*, 346 Or at 376-77 (applying that standard).

We do not understand petitioner to challenge the department's "jurisdiction" to promulgate a rule in this area generally, or to assert that the department failed to follow the required rulemaking procedures. *See Nay*, 267 Or App at 242 (noting that petitioner does not challenge department's compliance with rulemaking procedures). Instead, the initial question is whether the rules "depart[] from a legal standard expressed or implied in the particular law being administered, or contravene[] some other applicable statute." *Planned Parenthood*, 297 Or at 565; *see State ex rel Engweiler v. Felton*, 350 Or 592, 620, 260 P3d 448 (2011) (evaluating whether rules "depart from the legal standard expressed or implied in the enabling statutes" (internal quotation marks, alterations, and citation omitted)).

*Planned Parenthood* further explained that that standard required examining whether the rule "corresponds to the statutory policy." 297 Or at 573.

"To the extent that the rule departs from the statutory policy directive, it 'exceeds the statutory authority of the agency' within the meaning of those words in ORS 183.400(4)(b)."

*Id*. The court added that that understanding was the only way to give meaning to the statutory direction to consider whether the rule "[e]xceeds the statutory authority of the agency":

"'Authority' in that section cannot be taken to mean only the overall area of an agency's authority or 'jurisdiction,' because that construction would leave rules open to substantive review only for constitutional violations under ORS 183.400(4)(a). In effect, such an interpretation would expand every official's rulemaking power on matters within

his general assignment to the limits of constitutional law, whatever the legislative policy of the statute might be."

*Id.*

In *Planned Parenthood*, this court held the rule at issue invalid under ORS 183.400(4)(b). The legislature had provided by statute that the agency could promulgate rules for medical assistance, taking into account two variables: medical need and financial need. 297 Or at 572. The agency had promulgated a rule that provided that women over 18 could be reimbursed for only one elective abortion, while women 17 and under could be reimbursed for two. Although the legislature had authorized the agency to promulgate rules regarding reimbursement, the court concluded that the rule at issue departed from the legislature's statutory policy directive. The rule rigidly assumed that a second elective abortion was automatically not medically necessary if the woman was 18 or older, but that it was medically necessary if the woman was 17 or younger. *Id.* at 573. Those rigid and arbitrary limits did not correspond with the legislative directive:

> "We find it difficult to relate these arbitrary numerical rules either to the variable of medical need or to the variable of financial need implicit in the legislative program. Nor do we see how they allow for consideration of '[t]he conditions existing in each case,' as commanded by ORS 414.042(1)(d) [the relevant statute]."

*Id.*

In [*Leo v. Keisling*](#), 327 Or 556, 964 P2d 1023 (1998), this court similarly held that a rule did not conform to the legislature's statutory policy directive.[4] The legislature had directed the Secretary of State to promulgate rules regarding statistical sampling of initiative petition signatures in order to "'verify'" that the initiative petition had enough signatures to qualify to be on the ballot. *Id.* at 563 (quoting ORS 250.105(4)). The sampling rule promulgated by the

---

[4] *Leo* did not involve a challenge under ORS 183.400; it was an "as applied" challenge. However, the court applied the *Planned Parenthood* standard to conclude that the rule was invalid. *See* 327 Or at 562-63 (citing *Planned Parenthood* and focusing on "whether the substance of the action departed from a legal standard expressed or implied in the law being administered").

Secretary of State, however, allowed initiatives to appear on the ballot unless there was an 80 percent chance that the initiative had *not* met the signature requirements. *Id.* at 565-66. This court found the rule to be inconsistent with the statutory policy:

> "Th[e] policy [in the rule] cannot be reconciled with the policy in the statutory directive: 'to verify' that a petition contains the required number of signatures, *i.e.*, six percent of the total number of votes cast for all candidates in the last gubernatorial election."

*Id.* at 566.

In *Friends of Columbia Gorge*, this court also applied the *Planned Parenthood* standard to hold invalid part of a management plan. That case is somewhat more difficult to analyze, because it involved a commission created by interstate compact and governed by federal law. *See* 346 Or at 369-72, 384. Although this court concluded that the *Planned Parenthood* standard applied to the challenge to the management plan, *id.* at 376-77, the court also held that the commission, pursuant to federal law, was entitled to deference when it resolved ambiguities and filled gaps in the federal statutory scheme. *See id.* at 377-84. Even so, the court concluded that two provisions of the plan violated the federal act at issue. *Id.* at 399, 408. In the first case, the federal act "'require[d]'" the management plan to insure that development occurred without causing adverse cumulative effects to natural resources. *Id.* at 393 (quoting relevant federal statutes). The management plan had made "*some* effort" to prevent certain types of development from having adverse cumulative effects on natural resources, but "those efforts are incomplete." *Id.* at 398 (emphasis in original). Because the management plan "fails to *require* that [certain types of] development take place without causing adverse cumulative effects to natural resources," those portions of the management plan were invalid. *Id.* at 398-99 (emphasis in original). The second set of plan provisions were similarly defective. *See id.* at 405-08 (concluding that provisions of management plan "do not appear to be directed toward *requiring* that commercial, residential, and mineral resource development not cause adverse cumulative effects to cultural resources" (emphasis in original)).

We note that in *Planned Parenthood* and *Leo*, the issue was whether the rule's means of implementing the legislature's statutory directive is consistent with the statute, not whether the outcome in some cases might correspond with the outcome that the legislature had directed. In both of those cases, it presumably would have been "reasonably likely" that the rule would sometimes lead to the same results as the statute. In *Planned Parenthood*, some of the women who would have been reimbursed under the rule would also have been reimbursed under the statute. In *Leo*, some of the initiatives that would have been placed on the ballot under the rule would also have been placed on the ballot under the statute. In neither case, however, did this court suggest that an agency could defend a rule that led to outcomes that are *not* permitted by the statute, by arguing that the rule sometimes led to outcomes that *are* permitted by the statute. *See Planned Parenthood*, 297 Or at 573 (explaining that review for authority under ORS 183.400(4)(b) does not allow agency to ignore legislative policy of statute). Thus, we reject the department's suggested standard of review.

## III. DISCUSSION

The department asserts that we should first examine whether the rules are valid under state law before considering whether they are valid under federal law. *See State v. Sarich*, 352 Or 601, 617, 291 P3d 647 (2012) (noting "this court's usual methodology of considering issues of state law before issues of federal law"). We agree, and begin by examining whether the rules are valid under state law.

### A. *Legal Standards Established By Rule Amendments*

We must first identify the legal standard established by the amended rules. As we will explain, the two amendments establish the same basic legal standard.

The first amended rule, OAR 461-135-0832, defines "estate." Again, the version of the rule at issue provides in relevant part:

"(10)   'Estate' means:

"* * * * *

"(b)   With respect to the collection of payments made for public assistance provided on or after July 18, 1995:

"\* \* \* \* \*

"(B)   For recipients who die on or after October 1, 2008, all real property, personal property, or other assets, wherever located, in which a recipient had any legal title or ownership or beneficial interest at the time of death of the recipient, including real property, personal property, or other assets conveyed by the recipient to, subsequently acquired by, or traceable to, a person, including the recipient's spouse and any successor-in-interest to the recipient's spouse, through:

"\* \* \* \* \*

"(viii)   Other similar arrangement, such as an interspousal transfer of assets, including one facilitated by a court order, which occurred no earlier than 60 months prior to the first date of request established from the recipient's and the recipient's spouse's applications, or at any time thereafter, whether approved, withdrawn, or denied, for the public assistance programs referenced in OAR 461-135-0835(2)."

OAR 461-135-0832(10)(b)(B)(viii).

The second amended rule is OAR 461-135-0835, which describes the department's claim against the estate of a Medicaid recipient. Again, the text of that amended rule provides:

"(e)   For a recipient who died on or after October 1, 2008:

"\* \* \* \* \*

"(B)   \* \* \* [T]he Department has a claim against the estate of the recipient's spouse for public assistance paid to the recipient, but only to the extent that the recipient's spouse received property or other assets from the recipient through any of the following:

"\* \* \* \* \*

"(iii)   An interspousal transfer, including one facilitated by a court order, which occurs:

"(I)   Before, on, or after October 1, 2008; and

"(II)    No earlier than 60 months prior to the first date of request (see OAR 461-135-0832) established from the applications of the recipient and the recipient's spouse, or at any time thereafter, whether approved, withdrawn, or denied, for the public assistance programs referenced in section (2) of this rule."

OAR 461-135-0835(1)(e)(B)(iii).

The two amended rules thus establish the same fundamental legal standard for recovering payments to a Medicaid recipient from the estate of the recipient's spouse. The department must show that (1) an asset was transferred from the Medicaid recipient to the spouse, and (2) the transfer occurred within five years before the Medicaid recipient first applied for benefits. If the department so demonstrates, then the department may recover from the spouse's estate up to at least the value of the amount transferred by the Medicaid recipient.

Under ORS 411.060, the department has general authority to "adopt and enforce rules necessary to ensure full compliance with federal and state laws relating to public assistance programs and functions administered by the department." The department does not, however, assert that that generalized grant of rulemaking authority alone justifies it in adopting these particular rules. Instead, the department contends that its authority for the amended rules comes from the broad manner in which ORS 416.350(6)(a) defines the term "estate." As noted, ORS 416.350(2) allows recovery from the Medicaid recipient's "estate," while ORS 416.350(6)(a) defines "estate" to include "all real and personal property and other assets in which the deceased individual had any legal title or interest at the time of death." The department maintains that, as to any interspousal transfer—even those made up to five years before the person applied for Medicaid benefits—the Medicaid recipient retains a "legal title or interest at the time of death." The department contends that the Medicaid recipient has such a title or interest at the time of death in at least one of four ways: by the presumption of equal contribution to and common ownership of marital assets in the event of a marital dissolution (ORS 107.105(1)(f)); by the right of a spouse to an elective share under probate

law (ORS 114.600 to 114.725); by the statutory ability to avoid transfers without adequate consideration under ORS 416.350(2); or by the statutory authority to avoid transfers made with intent to hinder or prevent estate recovery under ORS 411.630(2).[5]

We turn to the sources of law identified by the department, and begin with the presumption of equal contribution and common ownership under Oregon marital dissolution law.

## B. *Marital Dissolution Law*

As petitioner notes, Oregon is a separate property state, meaning that a spouse may hold property solely in his or her own name. *See* Or Const, Art XV, § 5. That separate property is not subject to the debts of the other spouse, ORS 108.050 (specifically adding that that is also true of "real or personal property acquired by the spouse's own labor during the marriage"), and a spouse generally has no interest in property owned by the other spouse, ORS 108.060 (subject to exception for family expenses and education of children).

The statutory provision relied on by the department relates to property division on a marital dissolution. It provides, in part:

"(1)   Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. In determining the division of property under this paragraph, the following apply:

"* * * * *

---

[5] On review, the department does *not* challenge the Court of Appeals conclusion that "other similar arrangements," in the definition of "estate," is not, in and of itself, broad enough to reach the interspousal transfers at issue. *See* 267 Or App at 259-60 (indicating that "other similar arrangements," in context, refers only to "property in which the Medicaid recipient held an interest at the time of death or that was transferred on account of the Medicaid recipient's death," while the rule amendments allow recovery of assets transferred before the Medicaid recipient's death).

"(B)   The court shall consider the contribution of a party as a homemaker as a contribution to the acquisition of marital assets.

"(C)   Except as provided in subparagraph (D) of this paragraph, there is a rebuttable presumption that both parties have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held.

"* * * * *

"(E)   Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets under a judgment of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property."

ORS 107.105(1)(f).

ORS 107.105 addresses property divisions in marital dissolution cases. There are two different types of property involved. "Marital property" is all property held by either spouse, regardless of whether it is held jointly or separately and regardless of when it was obtained. "Marital assets," by contrast, are a subset of marital property. They are the assets obtained during the marriage by either spouse. *See Kunze and Kunze*, 337 Or 122, 133, 92 P3d 100 (2004) (describing both types of property). For marital assets, there is a rebuttable presumption that both parties contributed equally to the acquisition of those assets, and that homemaking constitutes a contribution. ORS 107.105(1)(f)(B), (C).

In making the property division, the court may award any marital *property*. It is not limited to awarding marital *assets*. Thus, the court may award to one spouse an asset that the other spouse obtained prior to the marriage and has always held separately. The court may also award to one spouse a marital asset as to which the other spouse rebutted the presumption of equal contribution. *See Kunze*, 337 Or at 135 (so noting). The ultimate question is whether the division is "just and proper in all the circumstances." ORS 107.105(1)(f); *see Kunze*, 337 Or at 133 (to achieve just

and proper division, "the statute empowers the court to distribute any real or personal property that either or both of the parties hold at the time of dissolution, including property that the parties had brought into the marriage").

If the court awards marital assets obtained during the marriage, but held in the name of a single spouse, then ORS 107.105(1)(f)(E) applies: The parties are considered to hold the asset in a "species of co-ownership," and the transfer is considered a division of " jointly owned property." As this court explained in *Engle and Engle*, 293 Or 207, 646 P2d 20 (1982), that text was added to the statute to prevent adverse tax consequences to a married couple. But for that amendment, if the court awarded one spouse an asset that had been held solely in the name of the other spouse—even if it was a marital asset and even if the other spouse was presumed to have contributed equally to its acquisition—the transfer might not be considered a transfer of jointly owned property, and the transferring spouse would be subject to tax liability. *See id*. at 209-10 (noting that Court of Appeals had so held in that case). In *Engle*, the court was unwilling to say anything more about the "species of co-ownership" than that it prevented adverse tax consequences on a property division. 293 Or at 219, 219 n 11.

To summarize: ORS 107.105 deals with the factors that a court considers in making a just and proper division of all property held by either spouse on dissolution of marriage. For property acquired during the marriage, there is a rebuttable presumption that both spouses contributed equally. If property acquired during the marriage is held in one spouse's name and the presumption of equal contribution is not rebutted, and if the trial court awards that property to the other spouse, then the property is treated as being held in a species of co-ownership and the award is considered a division of jointly owned property. The species of co-ownership thus appears to be a way to give effect to the presumption of equal contribution by both spouses, recognizing the different kinds of contributions spouses may make to marital assets during a marriage. *See Engle*, 293 Or at 211 n 4 (quoting legislative history indicating that amendment regarding species of co-ownership was merely to "clarify the

effect" of existing statutory provision presuming equal contribution of both spouses and directing that homemaking constituted a contribution). In short, the statutory provision relied upon by the state, ORS 107.105(1)(f)(E), addresses the consequences if the trial court should decide to make a particular property division. The statute does not otherwise appear to require the trial court to make any particular property division.

We do not, however, find it necessary to determine whether the presumption of equal contribution to the acquisition of marital assets creates a property interest within the meaning of ORS 416.350(6)(a). Even if the marital dissolution statute did create the sort of interest in property at death described by the definition of "estate" in ORS 416.350(6)(a), that would not resolve the issue before us. To determine the validity of the rule amendments, we must compare the legal standards contained in Oregon's marital dissolution statute with the legal standards found in the rule amendments.

In comparing the legal standards, we find major variations. The presumption of equal contribution on a marital dissolution applies only to assets obtained during the marriage (marital assets); the rule amendments at issue apply to all property, without regard to when that property was obtained, as long as the Medicaid recipient transferred it to the spouse. The marital dissolution presumption is only a presumption, and it can be rebutted; the rule amendments are absolute on their face. The marital dissolution presumption is simply a factor used by the courts to make a just and proper distribution of *all* marital property, whether separately or jointly owned; the rule amendments directly attach to a particular asset, apparently in a fixed amount. The rule amendments thus use broader criteria than the marital dissolution statute, and they would allow the department to make estate recovery in situations where ORS 107.105(1)(f)(E) would not. Accordingly, the legal standards found in the rule amendments depart from the statutory standards found in the marital dissolution statutes.[6]

---

[6] *Engle* specifically left open whether the "species of co-ownership" provision would apply if the marital asset had been a gift to one spouse. *See* 293 Or at 214. In 2011, the legislature amended ORS 107.105(1)(f) to specifically state that

## C. *Elective Share Under Probate Law*

The department alternatively contends that the rule amendments are valid because Oregon probate law—specifically, the statutes relating to the elective share—gives a Medicaid recipient a "legal title or interest at the time of death" in the property that the recipient had transferred to the spouse. We turn now to that contention.

The elective share statutes are found in ORS 114.600 to 114.725. The elective share is a surviving spouse's right to claim a share of what is called the "augmented estate." ORS 114.605(1). The amount of that share is a percentage of the augmented estate. ORS 114.605(2). The percentage is determined solely by the number of years that the parties were married, with the highest fractional share being 33 percent. *Id.* The augmented estate itself is all of the decedent's probate and nonprobate assets (as defined), plus essentially all of the surviving spouse's assets (called the "surviving spouse's estate"). ORS 114.630 (defining augmented estate generally); *see* ORS 114.675 (defining surviving spouse's estate). If the surviving spouse takes the elective share, the elective share is first decreased by the amount of the surviving spouse's estate. ORS 114.700(1). Only if that calculation still leaves some portion of the elective share unpaid will the surviving spouse be paid from the decedent's estate. ORS 114.700(2).[7]

---

property acquired by gift during the marriage, as long as it was always held separately, is not subject to the presumption of equal contribution. Or Laws 2011, ch 306, § 1 (adding new ORS 107.105(1)(f)(D)).

If one spouse transfers an asset to another, it is possible that that statutory amendment could terminate the presumption of equal contribution. We need not, and do not, decide that question here.

[7] There are a number of other limitations on the elective share. One is obvious: Because the definition of "estate" requires us to consider the interest at the time of the Medicaid recipient's death, the elective share requires us to assume counterfactually that, at that moment, the deceased Medicaid recipient is in fact alive to claim the elective share from his or her deceased spouse. *See* ORS 114.600(1) (requiring that the election must be made "before the death of the surviving spouse"). The elective share is subject to other limitations as well. *E.g.*, ORS 114.610 (procedurally, election must be made within nine months after spouse's death); ORS 114.620 (right to elective share may be waived); ORS 114.725 (if couple was "living apart at the time of the decedent's death, whether or not there was a judgment of legal separation," surviving spouse may be denied elective share, or may be limited to an amount that is "reasonable and proper"). We do not discuss those limitations in detail here, because they are not necessary to a determination of the issue before us.

Thus, to simplify: On the death of a person, that person's spouse can seek an elective share. If the spouse takes an elective share, the value of all of the decedent's assets and the spouse's assets are added together. The spouse will get a fraction of that sum, based entirely on how many years the couple had been married. But that amount is not awarded directly from the decedent's estate. Instead, the spouse's elective share is first "paid out" with the spouse's own assets. Only if that does not fully satisfy the elective share will the spouse receive money from the decedent's estate.

We now compare those legal standards to the standards found in the amended rules. We again assume, for purposes of argument, that the elective share under probate law constitutes the sort of interest in property at death described by the definition of "estate" in ORS 416.350(6)(a). Even so, we find major differences in the legal standards. The elective share fraction depends entirely on the number of years of marriage; the rule amendments focus solely on the amount transferred during a particular period. The elective share considers the whole value of the augmented estate; the rule amendments ignore anything other than the transferred asset. In fact, the legal standards are so different that it is difficult to find any points of correspondence at all. One cannot say that the rule amendments would lead to the same estate recovery, even in the most rough way, as the elective share statutes. Furthermore, the amended rules would allow the department to make estate recovery in situations where the elective share would not. The legal standard in the rule amendments thus also depart from the statutory standards found in the elective share statutes.

D.    *Other Avoidable Transfers*

Finally, the department asserts that the rule amendments are valid because the Medicaid recipient retains an interest at death as to assets that were transferred with inadequate consideration or with actual intent to hinder or prevent estate recovery, two statutes mentioned previously. We will assume for purposes of argument that both statutes create the sort of interest in property at death

described by the definition of "estate" in ORS 416.350(6)(a). We briefly consider each in turn.

### 1. *Transfers Without Adequate Consideration*

By law, transfers for inadequate consideration can be avoided under ORS 416.350(2), which provides, in part:

> "Transfers of real or personal property by recipients of such aid without adequate consideration are voidable and may be set aside under ORS 411.620(2)."

The department contends that the rule amendments are valid under that statute.

Again, we find broad differences between the legal standards contained in that statute and the amended rules. As the department concedes, that statute does not apply to transfers made by someone before they either became a Medicaid recipient or at least applied for such aid, because the statute applies only to transfers made "by recipients of such aid." The rule amendments, on the other hand, expressly apply to transfers made before someone applies for Medicaid—up to five years before that time. The statute makes voidable only those transfers made without adequate consideration. The rule amendments on their face apply without regard to the amount of consideration. Thus, the amended rules again would allow the department to recover in situations where the statute would not. The rule amendments depart from the statutory legal standard.

### 2. *Transfers With Intent to Hinder or Prevent Estate Recovery*

In addition, transfers that the Medicaid recipient made with the intent to hinder or prevent estate recovery are forbidden by ORS 411.630(2); that in turn permits them to be recovered under ORS 411.620. ORS 411.630(2) provides in part:

> "A person may not transfer, conceal or dispose of any money or property with the intent:
>
> "* * * * *
>
> "(b)  Except as to a conveyance by the person to create a tenancy by the entirety, to hinder or prevent the

department or the authority from recovering any part of any claim it may have against the person or the estate of the person."

Here again, the rule amendments create a very different legal standard from that found in the statute. The statute requires a showing that the transfer was made with a very specific and particular intent: to hinder or prevent the department from making estate recovery. The rule amendments require no showing of any intent as to the transfer; textually, an interspousal transfer made within the relevant time period is invalid without any need to consider the transferor's intent. The rule amendments thus would allow the department to make estate recovery in circumstances where the statute would not.

E.   *Summary: Rules Are Invalid Under State Law*

The legislature did not grant the department generalized authority to determine what transactions should be set aside. Instead, the legislature reserved that task to itself. It defined "estate" to include property interests that the Medicaid recipient held at the time of death. It also authorized the department to recover certain transfers—transfers made without adequate consideration by a Medicaid recipient, and transfers made with intent to hinder or prevent estate recovery.

The rule amendments at issue here show no connection to those limitations. They do not refer to the sources of law that they supposedly effectuate (*e.g.*, property division under marital dissolution law, elective share under probate law). They do not incorporate the limitations found in those sources of law (*e.g.*, the presumption of equal contribution on marital dissolution is rebuttable; the amount of the elective share is limited by number of years of marriage). The rule amendments instead allow the department to recover transfers based on an unrelated set of legal criteria. Because the amended rules "departed from a legal standard expressed or implied in the particular law being administered," *Planned Parenthood*, 297 Or at 565, the department exceeded its authority in adopting them, and they are invalid under ORS 183.400(4)(b).

F. *Court of Appeals' Consideration of Federal Law*

The department nonetheless asks us to reverse the Court of Appeals insofar as it concluded that the rules are inconsistent with federal law. In the event that the rules are held invalid, the department intends to ask the legislature to amend the state statutes in a way that would allow it to recover such transfers; it believes that the decision of the Court of Appeals would preclude that.

In this particular case, we conclude that it is appropriate for us to vacate that part of the Court of Appeals' opinion. Because we agree with petitioner that the amended rules are invalid under state law, they are simply invalid. It is unnecessary for us to decide whether, or to what extent, the rules might also be invalid under federal law.

## IV.    CONCLUSION

The department promulgated rule amendments that allow it to obtain estate recovery from transfers made to a spouse within the five years before a person applies for Medicaid. Our standard for judicial review is whether the department exceeded its statutory authority, ORS 183.400(4)(b), and more specifically whether the rule amendments depart from a legal standard expressed or implied in the particular law being administered, *Planned Parenthood*, 297 Or at 565. Because "estate" is defined to include any property interest that a Medicaid recipient held at the time of death, the department asserted that the Medicaid recipient had a property interest that would reach those transfers. In doing so, it relied on four sources: the presumption of common ownership in a marital dissolution, the right of a spouse to claim an elective share under probate law, the ability to avoid a transfer made without adequate consideration, and the ability to avoid a transfer made with intent to hinder or prevent estate recovery. In all instances, the rule amendments departed from the legal standards expressed or implied in those sources of law. Accordingly, the rule amendments exceeded the department's statutory authority under ORS 183.400(4)(b). The Court of Appeals correctly held the rule amendments to be invalid.

The decision of the Court of Appeals is affirmed in part and vacated in part. The rule amendments to OAR 461-135-0832(10)(b)(B)(viii) (2010) and OAR 461-135-0835 (1)(e)(B)(iii) (2010) are held invalid.