Argued and submitted November 14, 2019; decision of Court of Appeals reversed, final order of Oregon State Board of Nursing reversed, and case remanded to board for further proceedings July 2, 2020

Rebecca PULITO,
*Petitioner on Review,*

*v.*

OREGON STATE BOARD OF NURSING,
*Respondent on Review.*

(OSBN 1600671) (CA A165993) (SC S066569)

468 P3d 401

The Oregon State Board of Nursing sought to revoke licensee's registered nurse license and an administrative law judge (ALJ) was assigned to preside over the case. Licensee requested the assignment of a different ALJ, but the chief ALJ denied her request as "untimely" under OAR 471-060-0005. Licensee argued that OAR 471-060-0005 is invalid because it fails to implement proper "time limitations" as directed by ORS 183.645. The initially assigned ALJ issued a proposed order revoking licensee's nurse license, which the board adopted as its final order. The Court of Appeals affirmed without opinion. *Held*: (1) The term "time limitations" in ORS 183.645(1) means a specific period of time, identifiable at the outset; (2) OAR 471-060-0005 is invalid because it fails to establish proper time limitations; (3) the chief ALJ erred in relying on an invalid rule to deny licensee's request for a different ALJ and that denial may have impaired the fairness of the proceedings; and (4) the board erred in assuming the validity of OAR 471-060-0005 in its final order.

The decision of the Court of Appeals is reversed. The final order of the Oregon State Board of Nursing is reversed, and the case is remanded to the board for further proceedings.

On review from the Court of Appeals.*

Kevin Keaney, Portland, argued the cause and filed the briefs for petitioner on review.

Jona J. Maukonen, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* On judicial review of a final order from the Oregon State Board of Nursing. 295 Or App 669, 433 P3d 790 (2019).

Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, and Nelson, Justices, and Linder, Senior Judge, Justice pro tempore.**

NELSON, J.

The decision of the Court of Appeals is reversed. The final order of the Oregon State Board of Nursing is reversed, and the case is remanded to the board for further proceedings.

_____

** Garrett, J., did not participate in the consideration or decision of this case.

**NELSON, J.**

The issue in this judicial review of a final order of the Oregon State Board of Nursing (the board) is the meaning of the term "time limitations" in ORS 183.645(1). That statute requires the chief administrative law judge (ALJ) to assign a different ALJ to a contested case on written request from a party, subject to applicable "time limitations" that the chief ALJ has established by rule for submitting such requests. The chief ALJ established OAR 471-060-0005, under which the chief ALJ evaluates the timeliness of a request by determining whether a party had a "reasonable opportunity" to make an earlier request. Licensee challenges a preliminary decision of the chief ALJ that denied her request for a different ALJ. In that decision, the chief ALJ determined that licensee had failed to take advantage of a "reasonable opportunity" to make an earlier request. The contested case proceeded on the merits, and the board issued a final order revoking licensee's nursing license. The Court of Appeals affirmed without opinion. *Pulito v. Oregon State Board of Nursing*, 295 Or App 669, 433 P3d 790 (2019). Licensee petitioned this court for review, which we allowed.

In licensee's view, the denial of her request for a different ALJ was error. She contends that OAR 471-060-0005 is invalid because it does not impose a "time limitation" as authorized by ORS 183.645(1). Alternatively, she contends that the chief ALJ erred in applying OAR 471-060-0005 because her request for a different ALJ was made within a reasonable time. For the reasons explained below, we conclude that OAR 471-060-0005 is invalid as written and that the error in denying licensee's request for a different ALJ requires reversal. Because that ruling is dispositive, we do not reach licensee's alternative argument that the chief ALJ erred in applying the rule. Accordingly, we reverse the final order of the board and remand for a new hearing.

## I.   BACKGROUND

In February 2015, licensee self-reported to the board that she had struggled with substance abuse and was receiving treatment. The board decided that licensee must enter a program for health professionals that required regular drug

monitoring, with a program monitor reporting her progress to the board. Based on reports from the program monitor, in November 2015, the board notified licensee that it proposed to revoke her registered nurse license. Licensee requested a hearing on that proposed revocation, and her case was referred to the Office of Administrative Hearings (OAH) as a contested case.

On December 21, 2015, OAH mailed licensee—who, at the time, was not represented by legal counsel—a notice of her hearing date. That notice also informed her which ALJ had been assigned to the case. By January 14, 2016, licensee had retained counsel. On January 18, 2016, through her counsel, licensee submitted a written request for a different ALJ, which OAH received on January 19, 2016. The chief ALJ[1] denied that request, concluding that it was "untimely." Licensee, through counsel, moved for reconsideration, arguing that the chief ALJ could not deny as "untimely" her request, when the chief ALJ had not established applicable "time limitations" by rule, as required by ORS 183.645(1). Licensee argued that it was "clear error to impose a time limitation when none existed." The chief ALJ issued a ruling denying licensee's motion, reasoning that OAR 471-060-0005 was a proper implementation of ORS 183.645:

> "[OAR 471-060-0005] does not establish an arbitrary and inflexible deadline for making such a request. Nor does the statutory authority to establish 'time limitations and procedures' mandate the adoption of a strict deadline. Instead, the rule requires that the timeliness of such a request be assessed under the totality of the circumstances. [Licensee] *** presents no argument as to why [she] believes that this rule is not sufficient to establish the time limitations allowed by ORS 183.645(1). *** The request for reconsideration is denied."

After the chief ALJ's ruling, the contested case proceeded with the same ALJ who had been initially assigned to it. A hearing was held, and the assigned ALJ subsequently issued a proposed order revoking licensee's registered nurse

---

[1] It appears that the "presiding ALJ" was acting as the "designee" of the chief ALJ at this time. *See* OAR 471-060-0005(3) (providing that "[t]he Chief administrative law judge *or designee* shall decide all requests" (emphasis added)). We use the term "chief ALJ" in this opinion to describe the actions of the designee.

license. Licensee filed exceptions to that proposed order, incorporating by reference her request for a different ALJ and her motion for reconsideration, urging the board to find that the ALJ's proposed order was error because it was based on OAR 471-060-0005, which licensee had argued was invalid. The board adopted, in substantial part, the ALJ's proposed order, including as procedural history a statement that licensee's request for a different ALJ had been denied as untimely. The board's final order revoked licensee's nursing license.

Licensee then moved the board for a stay of enforcement of the final order while judicial review was pending, asserting that the chief ALJ had erred in denying her request for a different ALJ. When the board denied licensee's motion, licensee moved the Court of Appeals to review the board's denial of her request for a stay. Arguing against a stay, the board contended that, in denying licensee's request for a different ALJ, an important concern to OAH was control of its docket volume and that OAH's internal practice therefore had been to "routinely den[y] requests" even when those requests were made only a few days after assignment of an ALJ. The Court of Appeals granted licensee's motion to stay enforcement of the final order, pending final disposition on judicial review. In its order to that effect, the court determined that the board's argument was countered by the fact that

> "lay citizens dealing with state agencies reasonably would not be aware of OAH's docket problem or OAH's practice of denying requests for reassignment unless the request is submitted within a few days after notice of assignment. Indeed, the board makes no showing that attorneys typically know of OAH's practice."

The Court of Appeals later affirmed the board's final order without opinion, *Pulito*, 295 Or App 669. We then allowed licensee's petition for review.

## II. DISCUSSION

Licensee contends that OAR 471-060-0005 is invalid because it is inconsistent with ORS 183.645(1), which requires the chief ALJ to "assign a different [ALJ] for the

hearing upon receiving a written request" and authorizes the chief ALJ to establish by rule "time limitations and procedures for requests." The rule that the chief ALJ has established is OAR 471-060-0005, which provides, in part:

"(1)   The purpose of this rule is to establish uniform procedures for the change of assignment of administrative law judges.

"* * * * *

"(3)   Every party and agency in a contested case is entitled to request a change of administrative law judge. *The first request of that party or agency shall be automatically granted. If that party or agency makes a subsequent request, it must show good cause* why the administrative law judge should not preside over the hearing. The Chief administrative law judge or designee shall decide all requests.

"(4)   Notwithstanding section (3), *no request shall be granted if a party or agency had a reasonable opportunity to request a change of administrative law judge but did not do so. Reasonable opportunity is determined under the totality of circumstances.*"

(Internal quotation marks omitted; emphases added.)

Under OAR 471-060-0005(3), every party or agency[2] is "entitled to request a change of administrative law judge," and the first such request "shall be automatically granted." Then, a "subsequent request" requires a party to show "good cause" why a particular ALJ should not preside. That text, on its face, suggests that first requests are to be automatically granted—that nothing else is required of a party beyond the request itself—and that subsequent requests are to be granted only if a party shows good cause. However, section (4) provides that "*no* request shall be granted if a party had a reasonable opportunity to request a change of [ALJ] but did not do so." (Emphasis added.)

_____

[2] We acknowledge that the definitions of "party" and "agency" in ORS 183.310 are distinct, and that a "party" is a "person or agency" that is "entitled as of right to a hearing before the agency" or "named by the agency to be a party." ORS 183.310(7). Further, that an "agency" is "any state board, commission, department." ORS 183.310(1). However, we use the term "party" in this opinion to describe both a party and an agency, understanding that either may request the assignment of a different ALJ under ORS 183.645 and OAR 471-060-0005.

In licensee's view, OAR 471-060-0005(4) fails to adopt proper "time limitations," as authorized by ORS 183.645(1). Licensee contends that the term "time limitations" in ORS 183.645(1) means a specific time period, such as "days, weeks, months, or years," but OAR 471-060-0005(4) impermissibly sets forth a method by which the chief ALJ determines, on a case-by-case basis, whether a party took advantage of a "reasonable opportunity" to make a request. The board counters that OAR 471-060-0005 is valid because ORS 183.645(1) does not mandate the adoption of a specific time period but, rather, "delegate[es] broad authority to the chief ALJ to determine an appropriate time limitation." For the reasons explained below, we agree with licensee.

A.  *Controlling Principles*

This court may determine the validity of a rule upon review of an agency's order. ORS 183.400(2); *Hay v. Dept. of Transportation*, 301 Or 129, 137, 719 P2d 860 (1986). When a challenge to the validity of an administrative rule is based on a claim that the rule violates a statute, our standard for judicial review is whether the rule "[e]xceeds the statutory authority of the agency." ORS 183.400(4)(b). "Authority," as used in ORS 183.400(4)(b), does not refer to only the agency's overall "jurisdiction." Rather, "[t]o the extent that the rule departs from the statutory policy directive, it 'exceeds the statutory authority of the agency' within the meaning of those words in ORS 183.400(4)(b)." *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 573, 687 P2d 785 (1984). Accordingly, we must determine whether OAR 471-060-0005 "depart[s] from a legal standard expressed or implied in the particular law being administered." *Nay v. Dept. of Human Services*, 360 Or 668, 695, 385 P3d 1001 (2016) (citing *Planned Parenthood*, 297 Or at 565).

The law being administered is ORS 183.645. The question whether OAR 471-060-0005 "departs from the legal standard expressed or implied" in ORS 183.645 is one of legislative intent—that is, by authorizing the chief ALJ to establish by rule "time limitations," in ORS 183.645, did the legislature intend that the rule adopted would provide a specific time period within which a first request must be made? Or, did the legislature intend that the rule adopted

would provide the chief ALJ with broad authority to establish any method by which to evaluate timeliness, including a "reasonable opportunity" standard, determined under the totality of the circumstances in each case? Under Oregon's Administrative Procedures Act (APA), interpretation is a question of law ultimately for the court. ORS 183.482(8)(a).

Interpreting the term "time limitations" in ORS 183.645 requires us to apply the familiar principles of statutory construction set out in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). To determine what the legislature intended, we examine the text of ORS 183.645 in context, together with any legislative history[3] that aids our analysis. *Id*. In the absence of evidence to the contrary, we assume that the legislature intended words of common usage to be given their ordinary meanings. *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 589, 341 P3d 701 (2014).

B.  *Statutory Interpretation of ORS 183.645*

   1.  *Text*

We begin with the text of ORS 183.645(1) and (2), which provides:

"(1)  After assignment of an administrative law judge from the Office of Administrative Hearings to conduct a hearing on behalf of an agency, the chief administrative law judge shall assign a different administrative law judge for the hearing upon receiving a written request from any party in the contested case or from the agency. The chief administrative law judge may by rule establish time limitations and procedures for requests under this section.

"(2)  Only one request for a change of assignment of administrative law judge under subsection (1) of this section may be granted by the chief administrative law judge without a showing of good cause. If a party or agency fails to make a request under subsection (1) of this section within the time allowed, or if a party or agency objects to an administrative law judge assigned after a request for a different administrative law judge has been granted under subsection (1) of this section, the chief administrative law

---

[3] No legislative history sheds light on the meaning of the term "time limitations" in ORS 183.645.

judge shall assign a different administrative law judge only upon a showing of good cause."

Thus, subsection (1) provides that, after an ALJ has been assigned to a contested case, the chief ALJ shall assign a different ALJ upon written request. Subsection (1) further provides that the chief ALJ "may by rule establish time limitations and procedures for requests." Subsection (2) provides, "[o]nly one request for a change of [ALJ] under subsection (1) of this section may be granted *** without showing good cause." Further, if a request is not submitted "within the time allowed," then the party or agency must show good cause.

Where ORS 183.645(1) authorizes the chief ALJ to establish "time limitations," the legislature did not define that term. Without a statutory definition, "we ordinarily look to the plain meaning of a statute's text as a key first step in determining what particular terms mean." *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295, 337 P3d 768 (2014). This court frequently attempts to resolve disputes about plain meaning by consulting dictionary definitions of the relevant terms. *State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015).

The dictionary defines the term "time *limit*," but not "time *limitation*." However, one definition of "limit" *is* "limitation." *See Webster's Third New Int'l Dictionary* 1312 (unabridged ed 2002). Nevertheless, we will consider the definition of each. The dictionary definition of "time limit" is "a fixed period for doing or ending something ***." *Id.* at 2395.

The definition of "time" includes several meanings:

"**1 a :** a period during which something (as an action, process, or condition) exists or continues **:** an interval comprising a limited and continuous action, condition, or state of being **:** measured or measurable duration *** [1] **b :** a period set apart in some specified or implied way from others *** **2 a :** a point or period when something occurs **:** the moment of an event, process, or condition **:** occasion *** **3 :** an appointed, fixed, or customary moment or hour for something to happen, begin, or end *** **4 :** [relating to historical or geological time periods] **5 :** a known, fixed, or

anticipated period of existence or duration * * * **6 :** [seasons of the year] **7 :** [meters of time in poetry and music] **8 a :** a definite moment, hour, day, or year as indicated or fixed by a clock or calendar **:** a precise instant or date * * * **9 a :** one of a series of recurring instances or repeated acts or actions * * * **10 a :** finite duration * * *."

*Id.* at 2394 (boldface type in original).

The term "limitation" is defined as:

"**1 :** the action of limiting * * * **2 :** the quality or state of being limited * * * **3 a :** a restriction or restraint imposed from without (as by law, custom, or circumstances) * * * **4 :** a time assigned for something; *specifically* **:** a certain period limited by statute after which actions, suits, or prosecutions cannot be brought in the courts * * *."

*Id.* at 1312 (boldface type and italics in original).

The definitions of "time limit," "time," and "limitation," convey what one would assume "time limitations" ordinarily means—that is, a time period of a fixed, certain, measurable, predictable, or finite duration; one with a beginning and an end. The meanings of the term "time" have the characteristic of being identifiable, such that, even in the absence of highly specific demarcations of time, such as "one hour" or "twelve o'clock," the bounds within which periods such as "dinner time" or "Spring time" exist can be discerned or predicted.

Further, when the term "time" is paired with the term "limitation," a time period is restricted or restrained to a certain period such that, due to that imposed restriction, the subject act may not continue. As defined, for a time limitation to be effective, a "limitation" on "time" must necessarily indicate the instant at which a period "for doing or ending something" concludes. *Id.* at 2395. A "limitation" on "time" would be ineffective were it indefinite or undefined, because it could not operate as a "restraint" or a "restriction" on a time period. *Id.* at 1312. Thus, the dictionary definition of the terms "time limit," "time," and "limitation" collectively suggest that the plain meaning of the term "time limitations" in ORS 183.645(1) is a fixed time period of objectively identifiable or predictable bounds.

The dictionary is not the only source on which we rely to resolve the meaning of a term. We also must critically examine how those definitions fit into the context of the statute itself. *Gonzalez-Valenzuela*, 358 Or at 461.

2.  *Context*

The context of ORS 183.645 is consistent with the plain meaning of its key terms. That is, the context likewise suggests that the legislature used the term "time limitations" in subsection (1) to mean a fixed period of time—one that is predictable or objectively identifiable at the outset. Conversely, it does not suggest approval of a methodology based on an inquiry into the circumstances of the case, applied after a request—the subject act—has concluded.

We start at the beginning of subsection (1), which supplies the first indication that the term "time limitations" is an identifiable period of time for making a request for a different ALJ (without the burden of showing good cause). Subsection (1) provides that, "[a]fter assignment" of an ALJ, a different ALJ shall be assigned, upon written request from a party. The term "after" describes the certain moment in time after which a request may be submitted. That certain moment in time is identifiable due to the occurrence of a particular event: the assignment of an ALJ.

Similarly, the procedures by which a party obtains a different ALJ are tied to identifiable moments in time. Recall that subsection (1) establishes what, for shorthand purposes, we will refer to as a "no-cause" procedure for submitting a request. It provides that the chief ALJ "shall assign" a different ALJ upon receiving written request to do so. Under subsection (2), "[o]nly one request" under subsection (1) may be granted without a showing of good cause. Then, subsection (2) specifies two time periods when a party must show "good cause." The first is when a no-cause request is not received "within the time allowed," and the second is when a party objects to the assignment of an ALJ "after" a previous request has been granted. In sum, the no-cause procedure requires nothing more than a written request, and the procedure requiring good cause is triggered by certain events in time. Thus, ORS 183.645 provides for both a

no-cause procedure and a good cause procedure, and which procedure applies hinges upon *the moment in time* that the request is received.

By identifying a predictable, specific period of time during which the procedure requiring good cause applies, the context of ORS 183.645 suggests a legislative intent that the "time limitations" established in an implemented rule would also identify a predictable, specific period of time during which the no-cause procedure applies.

Other aspects of the context of ORS 183.645 also suggest that the term "time limitations" means a specific period of time, identifiable at the outset. For example, subsection (2) requires a showing of good cause when a party fails to make a request under subsection (1) "within the time allowed." The quoted phrase refers to the "time limitations" that the chief ALJ may establish under subsection (1) for the one-time, no-cause request. The words "within the time allowed" suggest a specific period of time, because the word "within" means "on the inside or on the inner side" and is "used as a function word to indicate enclosure or containment." *See Webster's* at 2627. As a whole, then, the words "within the time allowed" refer to a period of time inside of which a no-cause request shall be permitted, and conversely, outside of which a no-cause request shall be denied. Further, "within" is ordinarily an objectively identifiable period; conveying what can be readily discerned, such as, to illustrate, whether one is within a dwelling; within the limit of a timed exam; or within the bounds of a playing area on a sporting field. Because "within the time allowed" refers directly to the "time limitations" that the chief ALJ may establish by rule, that reference strongly suggests that the term "time limitations" is similarly an objectively identifiable period of time.

To summarize, the text and context establish that, where the legislature provided the opportunity to make a one-time, no-cause request for a different ALJ, the chief ALJ must grant that request if it is received "within the time allowed," *i.e.*, within a specific time period. The ordinary meaning of the term "time limitations" in ORS 183.645(1) means a specific time period—one that provides certainty or

predictability as to when a request for a different ALJ must be submitted—and is thus the standard from which OAR 471-060-0005 may not depart. *Nay*, 360 Or at 695. To the extent that the rule "[e]xceeds the statutory authority of the agency," it is invalid. ORS 183.400(4)(b).

C.   *Analysis of OAR 471-060-0005*

For the reasons next explained, OAR 471-060-0005 exceeds the scope of its authorizing statute, ORS 183.645, because it does not contain discernable, predictable time limitations, sufficient to provide a party the opportunity to identify when a request must be submitted. Therefore, OAR 471-060-0005 is inconsistent with ORS 183.645 and accordingly, invalid as written.

OAR 471-060-0005(3) provides that "[e]very party and agency in a contested case is entitled to request a change of administrative law judge," and that the first such request "shall be automatically granted." Subsection (3) then is modified by subsection (4), which provides, in relevant part:

> "Notwithstanding section (3), no request shall be granted if a party or agency *had* a reasonable opportunity to request a change of administrative law judge but *did not* do so. 'Reasonable opportunity' is determined under the totality of circumstances."

(Emphases added.)

The text of OAR 471-060-0005(4) uses past-tense phrasing to describe the time for making a request for a different ALJ. Thus, under that subsection, whether a party "had" a reasonable opportunity to request a change of ALJ but "did not" do so is a determination that can be made only after the chief ALJ receives the request. That is inconsistent with ORS 183.645 because the act of submitting a request can be evaluated from only a backward-looking posture—which means that a party or agency cannot identify in advance the time period for submitting a request. A party apparently can only wait and see whether the chief ALJ concludes that a request was timely and cannot discern at the outset any specific time period to request a different ALJ.

By providing that the timeliness of a request will be evaluated in hindsight by the chief ALJ, the text of OAR 471-060-0005(4) fails to establish "by rule" a time limitation "for requests" as ORS 183.645 envisions, because the rule appears to impose no "limitation" on the requestor. The only restriction that we can identify is not found in the rule, but rather, it is one imposed by the chief ALJ *after* a request has been submitted. Thus, the time period for making a first request is indefinite. As discussed earlier, though, an undefined or indefinite period of time for making a request is not a proper "limitation" on a time period, because there is no "restraint" or "restriction" marking the moment that the subject act must conclude.

Finally, under OAR 471-060-0005(4), a party's "reasonable opportunity" to object to an ALJ assignment is evaluated "under the totality of the circumstances in each case." Yet neither the rule nor ORS 183.645 require a first request to allege any "circumstances." It follows that, when the chief ALJ receives the written request, it contains only the request for a different ALJ. Therefore, whatever "circumstances" the chief ALJ evaluates to determine whether the request was timely can be known to only the chief ALJ, and not a party making a request. An evaluation of factual circumstances on an ad hoc basis does not constitute a specific period of time for a party to submit a request for a different ALJ and is inconsistent with the meaning of "time limitations" in ORS 183.645. For all those reasons, OAR 471-060-0005 "exceeds the statutory authority" of the agency and is therefore invalid. ORS 183.400(4)(b). *See Planned Parenthood*, 297 Or at 573.

D.   *Whether the Fairness of the Proceedings was Impaired*

The board presented one additional argument in support of affirmance, even if we conclude that OAR 471-060-0005 is invalid: licensee failed to argue that the chief ALJ's decision denying her request impaired the fairness of the proceedings. That argument is based on ORS 183.482(7), which provides, in part:

"*** The court shall remand the order for further agency action if the court finds that either the fairness of

the proceedings or the correctness of the action may have been impaired by a material error in procedure."

ORS 183.482(7) is one of several statutes in the APA that govern judicial review of final orders. Unlike the board, we do not read that provision to require licensee to demonstrate that the fairness of the proceedings was impaired. Rather, ORS 183.482(7) guides a reviewing court in determining the appropriate remedy where the fairness of the proceedings "*may* have been impaired by a material error in procedure." (Emphasis added.)

The chief ALJ's denial of licensee's request for a different ALJ was error, because that denial was based upon an administrative rule that is invalid for being inconsistent with its implementing statute. We conclude that the chief ALJ's denial "*may* have impaired the fairness of the proceedings" (emphasis added) as ORS 183.482(7) provides, such that it is appropriate to remand the board's final order.

Additionally, this court may determine the validity of a rule "upon review of an order in any manner provided by law." ORS 183.400(2). The APA expressly authorizes a court reviewing a final order for error of law to "reverse or remand" the order. ORS 183.482(8)(a). If an agency has acted under an erroneous interpretation of law and the correct interpretation compels a particular action, the APA requires the court to set aside or modify an agency's order or remand the case. ORS 183.482(8)(a)(A)-(B). Acting under an erroneous interpretation of law includes instances where an agency's final order assumes the validity of and relies on a rule that a reviewing court determines is invalid. *England v. Thunderbird*, 315 Or 633, 639, 848 P2d 100 (1993).

Licensee had argued at each stage in the contested case before the board that a correct interpretation of "time limitations" in ORS 183.645 was a specific time period and that, because OAR 471-060-0005 failed to provide a specific time period, it was invalid. Licensee urged the board to conclude that, in relying on OAR 471-060-0005, an invalid rule, the chief ALJ erred as a matter of law, and that as a result, the proposed order written by the assigned ALJ was also improperly before the board. We agree with licensee that the board should have reached such a conclusion, as it is

the "particular action" that a correct interpretation of ORS 183.645 would compel. ORS 183.482(8)(a). Instead, the board acted by issuing a final order that adopted the assigned ALJ's statement—set out in that ALJ's proposed order that the board later adopted in its final order—that licensee's request for a different ALJ had been denied as "untimely" under ORS 183.645 and OAR 471-060-0005. Because the final order of the board assumed and relied upon the validity of OAR 471-060-0005 in adopting the assigned ALJ's statement, the board acted upon an erroneous interpretation of law. *See England*, 315 Or at 639. Its decision was thus erroneous, and we may reverse the board's final order on those grounds. ORS 183.842(8)(a).

## III.   CONCLUSION

To summarize, we conclude from our examination of the text and context of ORS 183.645 that the legislature intended the term "time limitations" to mean an objectively identifiable time period—one that is discernable by an individual party at the outset, so that a party may know what is required to submit a timely request for a different ALJ, without the added burden of showing good cause. OAR 471-060-0005 is inconsistent with both the wording of that statute and its underlying legislative policy.

It follows that the final order of the board must be reversed, because the fairness of the proceedings may have been impaired when the chief ALJ relied on an invalid rule to deny licensee's request for a different ALJ, and because the board acted under an erroneous interpretation of law when it issued a final order that assumed the validity of that rule. As our holding implies, though the legislature authorizes an agency to interpret a statute by rule, such authority is not an unlimited delegation. A rule must be consistent with the legislative policy of the implementing statute. *See Planned Parenthood*, 297 Or at 573.

The decision of the Court of Appeals is reversed. The final order of the Oregon State Board of Nursing is reversed, and the case is remanded to the board for further proceedings.