No. 482           July 10, 2024           703

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STEPHEN M. THOMSEN,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A180442

Argued and submitted June 3, 2024.

Anna Sammons argued the cause and filed the briefs for petitioner. Also on the brief was Law Office of Anna P. Sammons.

Philip Thoennes, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Brad Mullen, Certified Law Student.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Petitioner seeks judicial review of a 2022 order of the Board of Parole and Post-Prison Supervision that set petitioner's sex offender notification level (SONL) at Level 2. On review, petitioner contends that the board's rules with respect to setting an individual's initial SONL are invalid, because those rules "assess[] risk at the time of release from supervision, however long ago that may have been, and fail[] to consider any additional evidence of current, present-day risk, no matter how compelling." As petitioner sees it, pursuant to ORS 163A.100,[1] the board is required to "create a methodology that assesses and classifies sex offenders by present risk of re-offense," and the board's rules are invalid because they fail to do that.

For the reasons below, we agree with petitioner. We conclude that the board's rules in OAR chapter 255, division 085, which aim to "assess the registrant's risk as it was at the time of their release from their index offense," OAR 255-085-0005, and not their "present[] *** risk of reoffending," ORS 163A.100, are invalid. Specifically, we conclude that OAR 255-085-0005[2] and OAR 255-085-0020,[3] which we

---

[1] ORS 163A.100 provides:

"The State Board of Parole and Post-Prison Supervision shall, in consultation with community corrections agencies, adopt by rule a sex offender risk assessment methodology for use in classifying sex offenders. Application of the risk assessment methodology to a sex offender must result in placing the sex offender in one of the following levels:

"(1) A level one sex offender who presents the lowest risk of reoffending and requires a limited range of notification.

"(2) A level two sex offender who presents a moderate risk of reoffending and requires a moderate range of notification.

"(3) A level three sex offender who presents the highest risk of reoffending and requires the widest range of notification."

[2] OAR 255-085-0005 provides, in pertinent part:

"(1) A classifying agency at initial classification and reassessment will assess the registrant's risk as it was at the time of their release from their index offense. A classifying agency will not consider desistance when using the Static-99R instrument to assess an individual. If the Static-99R coding manual, Exhibit STATIC-99R, and Board rules conflict, Board rules prevail."

[3] OAR 255-085-0020(6) requires that a "classifying agency," when conducting assessments for the purpose of setting an adult male's SONL, place registrants in "Notification Level 2" or "Notification Level 3," if that would have been their notification level "at the time of release from the index sexual offense,"

understand to be the subject of petitioner's challenge, are invalid.[4] That result follows from our opinion in *Sohappy v. Board of Parole*, 329 Or App 28, 46, 540 P3d 568 (2023), where we concluded that "the board's charge under ORS 163A.100 is to classify sex offenders into one of three notification levels based on their risk of reoffending at the time of the assessment." We reverse and remand.

## I.  BACKGROUND

In 2017, in California, petitioner was convicted of two counts of "annoying or molesting [a] child under 18 years of age" in violation of California Penal Law section 647.6(a). He was sentenced to three years of probation and was ordered to register as a sex offender.

Petitioner subsequently moved to Oregon and, pursuant to Oregon law, he was required to register as a sex offender in this state. *See* ORS 163A.020 (describing reporting requirements for people moving into Oregon). In 2022, over five years after his conviction, the board determined that, based on petitioner's score of four on the Static-99R,[5]

___

without considering "as part of the risk assessment the reduction of risk due to time offense-free in the community."

[4] We note that the current versions of OAR 255-085-0005 and OAR 255-085-0020 were effective August 16, 2022, before the board issued the order that is the subject of this judicial review. On review, both parties take the position that the current version of those rules are at issue.

We also note that petitioner does not clearly identify specifically which of the board's rules he requests that we invalidate on review, nor does the board suggest which rules we would need to invalidate on if we agree with petitioner's arguments. But, based on the issues squarely raised in the parties' briefing and at oral argument, we understand OAR 255-085-0005 and OAR 255-085-0020 to be at issue regarding how the board conducts its initial assessments. Further, our conclusion regarding those two rules obviates the need to address petitioner's arguments concerning what he calls his "statutory right to seek administrative review of *** risk classification" under ORS 163A.105(7)(c) and the board's rules related to that statute.

[5] As we explained in *Sohappy*:

"The Static-99R is an actuarial risk assessment instrument designed to assess risk of sexual recidivism for adult males who have already been charged with or convicted of at least one sex offence against a child or a non-consenting adult. The most recent sex offense for which a person has been arrested, charged, or convicted is the index offense. A person is scored on 10 factual items pertaining to their personal and criminal history at the time of the index offense or, for certain items, at the time of release for the index offense: (1) the person's age at release for the index sexual offense; (2) whether the person ever lived with an intimate partner for two continuous

petitioner was a level two offender—*i.e.*, that he presented a "moderate risk of reoffending and requires a moderate range of notification." ORS 163A.100(2).

Petitioner subsequently challenged the board's determination regarding his SONL, contending that the board erred, because its determination did not take into account his sex-offense-free time in the community post-conviction. Petitioner argued to the board that, under ORS 163A.100, the board was "statutorily required to assess his risk of re-offense and assign a Risk level I if he *currently presents* the lowest risk of reoffending; II if he *currently presents* a moderate risk of reoffending: or III if he *currently presents* the highest risk of reoffending." (Emphases added.)

But the board denied petitioner's challenge to his SONL. It explained that OAR 255-085-0020(6) prohibits consideration "as part of the risk assessment the reduction of risk due to time sexual offense-free in the community." According to the board, that section of OAR 255-085-0020 was "promulgated according to the legislative intent of ORS 163.100-125, which is to classify all adult male registrants into a notification level *based on their risk at the time of release from their most recent sexual offense.*" (Emphasis added.) As the board saw it, "classifying one registrant who is being assessed contemporary to his release from his index sexual offense, and another registrant[] years after their release is fundamentally unfair if the board considers desistence in a classification."

---

years; (3) index convictions for nonsexual violence; (4) prior convictions for nonsexual violence; (5) prior sexual offenses; (6) number of prior sentencing dates; (7) convictions for noncontact sex offenses; (8) having any unrelated victim; (9) having any stranger victim; and (10) having any male victim. For example, the second item is scored based on relationship history prior to release from the index offence. The scores on each item are added together to determine the person's Static-99R score."

329 Or App at 41-42 (internal quotation marks, footnote, and citation omitted). And, as explained further below, the Static-99R measures:

"the risk of recidivism at a specific point in time—on the day of the person's first opportunity to reoffend after the index offence (*e.g.*, release from prison for the index sex offence, conviction date if they received a non-custodial sentence, or date of charge if there was no conviction)."

*Id.* at 48-49 (internal quotation marks omitted).

The board further explained its view of the statutory and regulatory scheme under which it operates with regard to assignment of SONLs:

"The current sex offender notification level (SONL) process is a bifurcated process, that involves first the initial classification of a registered sex offender into a notification level. Second, and only after the initial classification is known, a registrant can affirmatively petition for relief from registration or reclassification to a lower notification level, and if deemed eligible for such action, a hearing would be scheduled at which time the factors described in ORS 163A.125(5) would be considered. *In its initial classification of any adult male registrant, including Petitioner, the Board does not profess to complete an overall evaluation of risk.* To do so would present profound fiscal and administrative burdens and would delay the Board's interest in expediting the process of classification of all registrants, as has been directed by the state legislature."

(Emphasis in original.)

Ultimately, the board determined that petitioner "misreads the language of ORS 163A.100, which requires the Board to adopt a methodology to classify sex offenders," noting that "the word 'currently' does not appear" in that statute. That is, as the board reasoned, ORS 163A.100 requires that the board adopt a methodology to classify sex offenders, but that that methodology need not assess a registrant's "current" risk of reoffending when determining an individual's SONL.

Thus, the board denied petitioner's challenge to his SONL.

## II.  DISCUSSION

On judicial review, petitioner contends that "because the board's own rules require it to make inaccurate assessments of risk and disregard reliable evidence, this Court should hold those rules invalid." Petitioner argues that, under ORS 163A.100, the board is required to "create a methodology that assesses and classifies sex offenders by present risk of re-offense," and that the board's rules regarding assignment of an individual's initial SONL are invalid because they fail to do that.

The board takes a different view. The board argues that the rules that it has adopted reflect a two-step process whereby the board first establishes an initial SONL based on "'the registrant's risk as it was at the time of their release from their index offense.'" (Quoting OAR 255-085-0005(1).) That initial classification, the board acknowledges, "does not account for factors that postdate the index offense," such as "offense-free time in the community."

At the second step, "a person who has been off supervision for at least 10 years may petition for reclassification." (Citing OAR 255-087-0050.) It is at that second step that the board considers "a person's offense-free time in the community *** for persons who are statutorily eligible for reclassification."

On judicial review, the board argues that that two-step process under its rules is in accord with Oregon's statutory scheme for sex offender registration. Further, it posits that the difference in considerations between the first step (initial classification, where it does not consider a person's offense-free time in the community) and the second step (reclassification, where it does consider time a person's offense-free time in the community) ensures that "similarly situated sex offenders are treated the same regardless of the happenstance as to when their initial classification took place." It provides the following example, which we will discuss later in this opinion:

> "Consider two adult male sex offenders, Smith and Jones, who had similar sex-offense convictions at similar ages and have lived in the community for more than a decade since. Assume that, at the time of release, both would have scored a 6 on the Static-99R, which corresponds to a Level III sex offender. But suppose that Smith was initially classified upon his release from the index offense and Jones, because of the backlog of cases to classify, was not initially classified until years later. Under petitioner's approach, Smith would have been initially classified as a Level III offender and therefore never would be eligible to be reclassified to Level I or to be relieved entirely of the obligation to report as a sex offender. *See* ORS 163A.125(3)(b) (limits on reclassification); ORS 163A.125(1)(a) (only a Level I sex offender may petition for relief from reporting). But Jones might be

initially classified at some lower level—perhaps even Level I—and might eventually become eligible for relief from reporting obligations entirely. Under the board's approach, by contrast, Smith and Jones are treated the same way: both have their initial classification set based on their circumstances at the time of release from the index offense, and both are eligible to petition for reclassification to the same extent and on the same timeframe."

A.  *Standard of Review and Controlling Principles*

    As noted, petitioner seeks judicial review of an order of the board. "This court may determine the validity of a rule upon review of an agency's order." *Pulito v. Board of Nursing*, 366 Or 612, 618, 468 P3d 401 (2020) (citing ORS 183.400(2)); *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 152, 881 P2d 119 (1994) ("Although arising in the context of a contested case proceeding, this is *a challenge to the validity of the rule as adopted*, on the ground that it exceeds the agency's statutory authority. ORS 183.400(4)(b)." (Emphasis in original.)). When, as here, a challenge to the validity of an administrative rule is based on a claim that the rule violates a statute, "our standard for judicial review is whether the rule 'exceeds the statutory authority of the agency.'" *Pulito*, 366 Or at 618 (quoting ORS 183.400(4)(b)).

    "'Authority,' as used in ORS 183.400(4)(b), does not refer to only the agency's overall 'jurisdiction.'" *Pulito*, 366 Or at 618. Instead, "to the extent that the rule departs from the statutory policy directive, it 'exceeds the statutory authority of the agency' within the meaning of those words in ORS 183.400(4)(b)." *Id.* (some internal quotation marks omitted). Here, we must determine whether the board's rules regarding sex offender notification levels "depart from a legal standard expressed or implied in the particular law being administered." *Nay v. Dept. of Human Services*, 360 Or 668, 695, 385 P3d 1001 (2016).

    The law being administered in this case is ORS 163A.100. The question whether the board's rules regarding sex offender notification levels—which, as described below, are set forth in OAR chapter 255, division 085—"depart[] from the legal standard expressed or implied" in ORS

163A.100 is one of legislative intent. *See Pulito*, 366 Or at 618.

## B.  *Analysis*

As noted, the law being administered in this case is ORS 163A.100. That statute provides:

> "The State Board of Parole and Post-Prison Supervision shall, in consultation with community corrections agencies, adopt by rule a sex offender risk assessment methodology for use in classifying sex offenders. Application of the risk assessment methodology to a sex offender must result in placing the sex offender in one of the following levels:
>
> "(1)  A level one sex offender who presents the lowest risk of reoffending and requires a limited range of notification.
>
> "(2)  A level two sex offender who presents a moderate risk of reoffending and requires a moderate range of notification.
>
> "(3)  A level three sex offender who presents the highest risk of reoffending and requires the widest range of notification."

The board's rules regarding sex offender notification levels are set forth in OAR chapter 255, division 085. Presently, and at the time of the board's order, OAR 255-085-0005 described the board's "policy and authority" with respect to that division. As set forth in the permanent administrative order concerning OAR 255-085-0005, OAR 255-085-0005 was adopted by the board in August 2022 to "explain the guiding principles" of the board's rules in OAR chapter 255, division 085.

OAR 255-085-0005 provides, in pertinent part:

> "(1)  A classifying agency at initial classification and reassessment will assess the registrant's risk *as it was at the time of their release from their index offense*. A classifying agency will not consider desistance when using the Static-99R instrument to assess an individual. If the Static-99R coding manual, Exhibit STATIC-99R, and Board rules conflict, Board rules prevail."

OAR 255-085-0005 (emphasis added).

OAR 255-085-0020(2) directs how agencies must classify adult male registrants, such as petitioner, within Oregon's offender notification scheme:

"For classification and community notification for adult male registrants, classifying agencies shall use the Static-99R actuarial instrument with the coding manual, Exhibit STATIC-99R, to conduct a sex offender risk assessment, exce*pt as to where it conflicts with OAR 255-085-0020(6)*. Classifying agencies may score registrants using information from previous Static-99 or Static-99R assessments. Classifying agencies shall score and place each registrant into a notification level:

"(a)  Notification Level 1: Static-99R score of -3 to 3;

"(b)  Notification Level 2: Static-99R score of 4 to 5; or

"(c)  Notification Level 3: Static-99R score of 6 or higher."

Finally, OAR 255-085-0020(6) directs agencies to designate adult male registrants as "Notification Level 2" or "Notification Level 3" based on their risk of reoffense "at the time of release from the index sexual offense" and to not consider "as part of the risk assessment the reduction of risk due to time offense-free in the community":

"Classifying agencies shall place registrants into Notification Level 3 if an assessment under OAR 255-085-0020(2) as it was at the time of release from the index sexual offense would place them in the highest risk category, or Notification Level 2 if an assessment under OAR 255-085-0020(2) as it was at the time of release from the index sexual offense would place them in the moderate risk category, without considering as part of the risk assessment the reduction of risk due to time offense-free in the community."

OAR 255-085-0020(6).

While this judicial review was pending, we decided *Sohappy*, in which we concluded that the board's interpretation of a prior version of OAR-255-085-0020 (Apr 29, 2020) was "implausible." 329 Or App at 50 ("In sum, we agree with petitioner that the board implausibly interpreted OAR 255-085-0020 as allowing it to disregard a registrant's

sex-offense-free time in the community when using 'the Static-99R actuarial instrument \*\*\* along with attending rules and research found on http://www.static99.org/' to assess the risk that a registrant will commit a new sex offense." (Quoting OAR-255-085-0020 (Apr 29, 2020) (omission in *Sohappy*).)). That prior version of OAR-255-085-0020, unlike the current version, did not expressly prohibit classifying agencies from considering offense-free time in the community when classifying an individual into a SONL, and the board had interpreted the prior rule to permit the board to disregard an individual's offense-free time in the community when classifying an individual into a SONL.

In *Sohappy*, after considering the text of ORS 163A.100 and the purpose of Oregon's scheme for sex offender notification—*i.e.*, to "assist law enforcement in preventing future sex offenses by classifying registrants based on their risk of committing a new sex offense"—we concluded that "the board's charge under ORS 163A.100 is to classify sex offenders into one of three notification levels based on their risk of reoffending *at the time of the assessment*." *Id.* (emphasis added). We further explained that the 2013 Legislative Assembly, which enacted ORS 163A.100, enacted "a statute that tasked the board with assessing *present risk*." 329 Or App at 47 n 10 (emphasis added); *see also Watson v. Board of Parole*, 329 Or App 13, 25, 540 P3d 20 (2023) (citing *Sohappy* for the proposition that in enacting ORS 163A.100 "the legislature enacted a statute that requires a present risk assessment").

We concluded in *Sohappy* that the board's interpretation of OAR-255-085-0020 (Apr 29, 2020)—which, as noted, was an interpretation that allowed the board to disregard offense-free time in the community when setting an individual's SONL—was implausible, in part, because the Static-99R "Coding Rules" demonstrated that the board's interpretation led to a statistically invalid assessment of present risk:

> "The Coding Rules make clear that the Static-99R score itself measures the risk of recidivism at a specific point in time—on the day of the person's first opportunity to reoffend after the index offence (*e.g.*, release from prison for

the index sex offence, conviction date if they received a non-custodial sentence, or date of charge if there was no conviction). No matter how much time has passed since then, the score still summarizes what their risk was like on that day. Because a person's sexual recidivism risk declines over time as time passes without a new sexual offense, the Static-99R score is 'valid,' that is, it is a statistically valid measure of a person's risk of sexual recidivism, only at release and for 'approximately two years' thereafter. Thus, if, more than two years after a person's release, an evaluator uses the Static-99R score alone to assess the person's recidivism risk, the evaluator will necessarily reach a statistically invalid conclusion, according to the information in the Coding Rules."

*Sohappy,* 329 Or App at 48-49 (internal citation and brackets omitted; some internal quotation marks omitted). That is, under the Coding Rules for the Static-99R, we explained that "as to registrants who have been living in the community for more than two years since release, the board must consider sex-offense-free time to arrive at a statistically valid assessment of the risk that the registrant will commit a new sex offense." *Id.* at 49.

In reaching our conclusion in *Sohappy*, we also observed that our conclusion that the board's interpretation of OAR-255-085-0020 (Apr 29, 2020) was implausible was "consistent with the statutory scheme that the board adopted the rule to implement," which requires "assessing each existing and new registrant to determine the statistical risk of committing another sex offense that they 'present.'" *Id.* at 50. And, further, we noted that "[w]e have previously invalidated a rule that does not, in fact, relate to what the board is supposed to measure." *Id.* (internal quotation marks omitted).[6]

---

[6] OAR-255-085-0020 (Apr 29, 2020), which was at issue in *Sohappy*, provided that the board "shall use the Static-99R actuarial instrument on the Board's website at http://www.oregon.gov/BOPPPS *along with* attending rules and research found on http://www.static99.org/, to conduct a sex offender risk assessment" and place each registrant into one of the three notification levels. *Sohappy*, 329 Or App at 30 (emphasis added).

Consequently, in addition to our interpretation of ORS 163A.100 and the Coding Rules, our analysis in *Sohappy* considered "research on the Static-99 website" in reaching the conclusion that the board's interpretation of OAR-255-085-0020 (Apr 29, 2020) was implausible.

Turning back to the present case, as set forth above, "to the extent that [a] rule departs from the statutory policy directive it 'exceeds the statutory authority of the agency' within the meaning of those words in ORS 183.400(4)(b)." *Pulito*, 366 Or at 618 (some internal quotation marks omitted); *see id.* at 627 (To be valid, "[a] rule must be consistent with the legislative policy of the implementing statute.").

"[T]he board's charge under ORS 163A.100 is to classify sex offenders into one of three notification levels based on their risk of reoffending *at the time of the assessment*." *Sohappy*, 329 Or App at 46 (emphasis added). In contrast to the board's charge under ORS 163A.100, the stated purpose of the board's rules in OAR chapter 255, division 085, is to "assess the registrant's risk as it was at the time of their release from their index offense," OAR 255-085-0005. And under OAR-255-085-0020, the methodology that the board uses to determine an adult male's notification level—*viz.*, failing to consider offense-free-time in the community—leads to a statistically invalid assessment of present risk for offenders such as petitioner. *See Sohappy*, 329 Or App at 48-49 ("[I]f, more than two years after a person's release, an evaluator uses the Static-99R score alone to assess the person's recidivism risk, the evaluator will necessarily reach a

---

The current version of OAR 255-085-0020, unlike the version that was at issue in *Sohappy*, does not reference the "attending rules and research found on http://www.static99.org/." Further, as noted, the current version OAR 255-085-0005 provides that, "If the Static-99R coding manual, Exhibit STATIC-99R, and Board rules conflict, Board rules prevail."

Notwithstanding those changes to the board's rules, *Sohappy's* analysis demonstrates (1) that the board's charge under ORS 163A.100 is to measure an offender's "risk of reoffending at the time of the assessment," and (2) that the "Static-99R score itself measures the risk of recidivism at a specific point in time—on the day of the person's first opportunity to reoffend after the index offence," even though "a person's sexual recidivism risk declines over time as time passes without a new sexual offense." *Id.* at 46, 48-49 (internal quotation marks and brackets omitted).

Ultimately, our task in this case is to determine whether, as noted above, OAR 255-085-0005 and OAR 255-085-0020 "'exceed[] the statutory authority of the agency,'" *Pulito*, 366 Or at 618 (quoting ORS 183.400(4)(b)), *i.e.*, whether they "depart from a legal standard expressed or implied in" ORS 163A.100, *Nay*, 360 Or at 695. As explained below, we conclude that those rules do, because they do not measure what the legislature has charged it with measuring under ORS 163A.100 (*i.e.*, present risk). Instead, they measure (and seek to measure) the risk that Static-99R score itself measures—the risk of recidivism on the day of the person's first opportunity to reoffend after the index offense.

statistically invalid conclusion, according to the information in the Coding Rules."). Further, for other offenders—*i.e.*, youth offenders and adult women—under the board's rules, and as the board acknowledges on appeal, a classifying agency is charged with assessing "the registrants' risk as it was at the time of their release from their index offense" not an individual's present risk as required by ORS 163A.100.

Because the board's methodology for initial classification of an individual's SONL does not measure what the legislature has charged it with measuring under ORS 163A.100 (*i.e.*, present risk), but instead measures "the registrant's risk as it was at the time of their release from their index offense," we conclude that OAR 255-085-0005 and OAR-255-085-0020 are invalid. That is, they "depart from a legal standard expressed" in ORS 163A.100 and therefore "exceed[ ] the statutory authority" of the board, within the meaning of ORS 183.400(4)(b).[7]

In a memorandum of additional authorities, the board argues that *Sohappy* is not controlling, because our interpretation of ORS 163A.100 in *Sohappy* was dictum, which we are not bound to follow. *See Mastriano v. Board of Parole*, 342 Or 684, 692 n 8, 159 P3d 1151 (2007) ("This court has declined to treat a prior interpretation of a statute as authoritative when it is *dictum*."). Further, at oral argument, it asserted that, if we disagree that our interpretation of ORS 163A.100 in *Sohappy* was dictum, then *Sohappy* is "plainly wrong" and should be overruled.

We disagree with the board that our analysis of ORS 163A.100 in *Sohappy* was dictum. Our decision in *Sohappy* was not only partially premised on our interpretation of ORS 163A.100, but our interpretation of ORS 163A.100 in *Sohappy* was, in fact, a "foundational issue" to our analysis. 329 Or App at 46 ("Before we address the issues on which the parties disagree, we observe that there is a foundational

---

[7] Petitioner also raises an argument that the board's rules violate his rights under the Equal Protection Clause of the United States Constitution, in that those rules "treat adult males differently from all other offenders." We do not address that argument, because it is undeveloped. *Trent v. Connor Enterprises, Inc.*, 300 Or App 165, 170, 452 P3d 1072 (2019) (declining to "develop arguments *** that have not been briefed sufficiently to persuade us of their merit, and that raise potentially complicated issues").

issue that does not appear to be in dispute, which is that the board's charge under ORS 163A.100 is to classify sex offenders into one of three notification levels based on their risk of reoffending at the time of the assessment."); *see also Engweiler v. Persson*, 354 Or 549, 558, 316 P3d 264 (2013) ("In judicial opinions, [dictum] commonly refers to a statement that is not necessary to the court's decision.").

Nor are we persuaded by the board's assertion during oral argument that our interpretation of ORS 163A.100 in *Sohappy* was "plainly wrong." *See State v. Civil*, 283 Or App 395, 417, 388 P3d 1185 (2017) ("[D]ue regard for *stare decisis* and our predecessors' collegial commitment demands that 'plainly wrong' be a rigorous standard, satisfied only in exceptional circumstances."). Consequently, we are bound by *Sohappy. Ingle v. Matteucci*, 315 Or App 416, 418, 501 P3d 23 (2021), *rev'd on other grounds*, 371 Or 413, 537 P3d 895 (2023) ("[W]e are bound by our controlling precedent.").[8] Having reached that conclusion, we observe that, as the board's example concerning "Smith and Jones" highlights, when an initial SONL assessment takes place—that is, whether it takes place (1) at the time of release or (2) after a registrant has had a substantial amount of offense-free-time in the community—is significant under Oregon's present statutory scheme for assigning a SONL; two registrants who present the same risk at the time of their release as measured using their Static-99R scores may receive different SONLs if the assessment for one of those registrant's

---

[8] In addition, the board argues that *Sohappy* is not controlling, because *Sohappy* "held that the board implausibly interpreted [a] prior version[] of OAR 255-085-0020" and the board's order "on judicial review in this case applied the current version of OAR 255-085-0020."

But, as noted, the decision in *Sohappy* was partially premised on our interpretation of ORS 163A.100, and we think that interpretation is dispositive in this case. Although OAR 255-085-0020 has changed since *Sohappy* was decided, ORS 163A.100 has not.

Further, the board argues that this case is like *Lewis-Taylor v. Board of Parole*, 329 Or App 53, 540 P3d 34 (2023), where, according to the board, we "rejected a similar challenge under a newer version of [OAR 255-085-0020] that expressly prohibits the board from considering desistance in setting an offender's initial classification level."

The difficulty with the board's reliance on *Lewis-Taylor* is that in that case we rejected the petitioner's arguments "on procedural grounds, without reaching the merits." *Id.* at 56. It does not support the board's arguments in this case.

takes place at the time of release and the assessment for the other registrant takes place years after release. The delay in assessing a registrant may occur, for example, because a registrant moves to Oregon from another state (like petitioner) or because "of the backlog of cases to classify" in Oregon (like Jones in the board's example). Nevertheless, those different SONLs—*i.e.*, different risk classifications—are ultimately the result of factual differences between the registrants at the time of their assessments which causes them to present different levels of risk of reoffense at that time. *See Watson*, 329 Or App at 24 ("The fact that some registrants do not have sex-offense-free time does not mean that the board can disregard it for those registrants who have it. Indeed, it is precisely the existence of factual differences between registrants that causes them to present different levels of risk to the community and that allows for different risk classifications.").

Finally, we note that our decision in *Sohappy*, and our conclusion here, which follows from *Sohappy*, are based on the present version of ORS 163A.100. Ultimately, that statute reflects a policy choice of the legislature and can be changed by legislative action—by amending ORS 163A.100, creating new provisions in ORS 163A.100, or repealing provisions of ORS 163A.100. *See, e.g.*, *Farmers Ins. Co. v. Mowry*, 350 Or 686, 697, 261 P3d 1 (2011) ("After we have interpreted a statute, the legislature's constitutional role allows it to make any change or adjustment in the statutory scheme that it deems appropriate, given this court's construction of the statute (and, of course, subject to constitutional limitations)."). As the Supreme Court has noted, "[t]he legislature can—and often does—amend a statute that this court has interpreted to clarify or change the statute or otherwise to advance the policy objectives that the legislature favors." *Id*.

Reversed and remanded.